IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FRANCK HANSE, | ) |
|     Petitioner, | ) Case No. 1:17-cv-04573 |
| v. | ) Judge Robert M. Dow Jr. |
| UNITED STATES OF AMERICA, | ) |
|     Respondent. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PETITION TO QUASH OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

The United States files this Memorandum in Support of Its Motion To Dismiss the Petition to Quash IRS Summons filed in this case (Doc. No. 1). The United States files this motion as a motion to dismiss under Rule 12(b)(6) for failure to state a claim or, alternatively, to the extent that the Court determines that this discussion expands the scope of the pleadings, as a motion for summary judgment pursuant to Rule 56.[1]

**STATEMENT OF MATERIAL FACTS**

1. Franck Hanse is the Petitioner. (Doc. No. 1 ¶ 3). Mr. Hanse gave the Court jurisdiction over himself by virtue of filing the Petition in this case. *Id.*

2. The United States of America is the Respondent.

---

[1] "Summons enforcement proceedings are intended to be summary in nature, and whether a hearing is needed is left to the district court's discretion." *2121 Arlington Heights Corp. v. I.R.S.*, 109 F.3d 1221, 1226 (7th Cir. 1997) (internal citations omitted); *see also United States v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir. 2003). "[C]ourts have recognized that a proceeding to enforce a tax summons is a most appropriate candidate for streamlined procedures." *United States v. McCoy*, 954 F.2d 1000, 1004 (5th Cir. 1992).

1

3. The summons at issue in this case was issued to a law firm, Marc D. Sherman & Colleagues, P.C., which is located within the jurisdiction of this Court. Ex. 1, Bjorvik Decl. ¶ 1.

4. On September 7, 2016, the French government submitted an exchange-of-information request (the "Request") to the IRS seeking information in connection with tax investigations concerning Franck Hanse for income tax (2013-2014) and wealth tax (2014-2015). Ex. 2, Palacheck Decl. ¶ 3-4.

5. The request primarily concerns two transfers of funds to the summoned party totaling over 500,000 euros. *Id.* ¶ 6.

6. The Request stated that Franck Hanse was born in France and is domiciled at 5, avenue de l'etang 92500 Rueil Malmaison – France. *Id.* ¶ 5.

7. The Request sought information regarding the two transfers, the accounts into which the funds were deposited, the beneficial owners of the funds, income generated from the funds, and the ultimate disposition of the funds. *Id.* ¶ 7.

8. France believes that these funds arose from Mr. Hanse's sale of two Parisian apartments and that Mr. Hanse instructed that the proceeds of these sales be paid to an IOLTA account maintained by Marc D. Sherman & Associates P.C. (now Marc D. Sherman & Colleagues, P.C.). *Id.* ¶ 6.

9. The French tax authorities indicated that they had exhausted all means available in their country to obtain the information requested. *Id.* ¶ 11.

10. The U.S. Competent Authority determined that the request was valid pursuant to the U.S.-France Treaty and further determined that it would be appropriate for the United States to honor the request. *Id.* ¶ 16.

11. Pursuant to the Request and the obligations of the United States under the U.S.-France Treaty, the IRS issued a summons to Marc D. Sherman & Colleagues, P.C. for copies of 9 categories of documents. *See* Ex. 1, Bjorvik Decl. and Exhibit A attached thereto. These categories are listed in the summons. *Id.* at Ex. A.

12. Revenue Agent Alex Bjorvik personally served the third-party summons on Marc D. Sherman & Colleagues, P.C. on June 1, 2017. Ex. 1, Bjorvik Decl. ¶ 1. The summons required production of the summoned documents by July 5, 2017. *Id.* at Ex. A.

13. The IRS searched its computer records for addresses of Mr. Hanse. Ex. 2, Palacheck Decl. ¶ 8. Finding none, the IRS searched for alternative addresses of his wife. *Id.* The IRS's last known address for Mr. Hanse's wife is identical to the address that France provided for Mr. Hanse. *Id.*

14. IRS Tax Analyst Michael Richard sent notices of third party summons to the persons identified in the summons, Franck Hanse and Byline Bank, on June 2, 2017. *See* Exhibit 2, Palacheck Decl. ¶ 9-10 and Exhibits B and C thereto.

15. Franck Hanse was timely served via Registered Mail, and Byline Bank was timely served via Certified Mail. *Id.* ¶ 9-10.

## **ARGUMENT**

The Supreme Court established the framework for judicial review of a summons in *United States v. Powell*, 379 U.S. 48 (1964). In that case, the Court held that the IRS did not have to satisfy any standard of probable cause in order to issue a valid summons. All that the Government must show is that the summons (1) is issued for a legitimate purpose; (2) seeks information that may be relevant to that purpose; (3) seeks information that is not already within the IRS's possession; and (4) satisfies all administrative steps required by the Internal Revenue

Code. *Powell*, 379 U.S. at 57-58. The *Powell* framework is employed even when considering a summons issued pursuant to a request by a treaty partner. *Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001). The government's minimal burden at this stage can be fulfilled by a "simple affidavit" by the IRS agent issuing the summons. *Id*. Attached hereto are the declarations of Deborah Palacheck and Alex Bjorvik, which establish the *Powell* factors. *See* Ex. 1 and 2. Once the *Powell* factors are established, the Petitioner carries a "heavy burden" in refuting them. *Mazurek*, 271 F.3d at 230.[2] In this case, the Petitioner fails to meet this burden.

1. **Notice of Third-Party Contacts Under Section 7602(c) Was Not Required In This Case**

Petitioner argues that the IRS improperly contacted the summoned party without first providing advance notice to Petitioner that third-party contacts might be made. Pet. ¶ 7. This argument is misplaced. Section 7602(c)(1)[3] provides that an officer or employee of the IRS may not contact any person other than the taxpayer "with respect to the determination or collection of the tax liability" of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made. "Tax liability" for purposes of § 7602(c)(1) excludes the "liability for any tax imposed by any other jurisdiction." Treas. Reg. § 301.7602-2(c)(3)(i)(C).

In this case, the IRS is seeking to obtain third-party records that are necessary for France's determination of the correct amount of French tax due from Petitioner. *See* Ex. 2,

---

[2] The United States notes that this Court has previously held that where the United States moves to dismiss the petition, instead of moving to compel compliance, the United States does not need to establish a *prima facie* case, and therefore, the burden immediately shifts to the petitioner to establish a valid defense. *See O'Doherty v. United States*, 05-cv-3639, 2005 WL 3527271, at *5 (N.D.Ill. Dec. 20, 2005) (citing *Jungles v. United States*, 634 F. Supp. 585, 586 (N.D. Ill. 1986)). In any event, the United States submits that the attached affidavits meet its burden under *Powell*.
[3] Unless otherwise indicated, all "Section" references are to Title 26 of the United States Code and the regulations thereunder.

Palacheck Decl. The summons was issued pursuant to a treaty request concerning a tax imposed by a foreign jurisdiction, and not in relation to any tax liability imposed by Title 26 of the United States Code. Therefore, the summons at issue in this case was not a third-party contact with respect to the determination or collection of a "tax liability" as that term is used in Section 7602(c)(1), and a notice of third party contact was not required prior to issuing and serving the summons. *See* Treas. Reg. § 301.7602-2(b).

**2. The IRS Properly Provided Notice Pursuant to Section 7609**

Petitioner also argues that the IRS did not provide notice to Petitioner of the summons at issue, as required by Section 7609(a)(1). Pet. ¶ 8. The evidence shows otherwise. Any person identified in a summons must be given notice of the summons within 3 days of the day on which service is made, but no later than the 23rd day before the day fixed as the day upon which the summoned records are to be examined. *See* Section 7609(a)(1). Under Section 7609(a)(2), notice of a summons shall be sufficient if notice is timely served in the manner provided in Section 7603 upon the person entitled to notice, or is mailed by certified or registered mail to the "last known address" of the noticee, or in the absence of a last known address, is left with the person summoned.

Generally speaking, the "last known address" is the address appearing on the taxpayer's most recently filed return, unless the taxpayer gives the IRS a clear and concise notification of a different address. *Hynard v. IRS*, 223 F. Supp. 2d 502, 508 (S.D.N.Y. 2002), *aff'd* 87 Fed. Appx. 220 (2d Cir.) (addressing the requirement of "last known address" with respect to mailing a statutory notice of deficiency). When sending notice, the IRS is charged with knowing the information it has readily available when it sends notice to taxpayers. *Hunter v. Commissioner*, T.C. Memo 2004-81, at *15 (2004). Where a summons is issued pursuant to a treaty request, the

5

IRS may rely on the address provided by foreign authorities unless the IRS has been apprised of the noticee's actual address at or before the time the notice is mailed. *Lidas v. United States*, 238 F.3d 1076, 1083 (9th Cir. 2001).

In this case, the IRS searched its computer records for alternative addresses of Mr. Hanse. Ex 2, Palacheck Decl. ¶ 8. Finding none, the IRS searched for alternative addresses of his wife. *Id.* The IRS's last known address for Mr. Hanse's wife is identical to the address that France provided for Mr. Hanse. *Id.* The notice of summons was timely mailed via registered mail to the domicile of Franck Hanse at the address reflected in France's treaty request. *Id.* ¶ 9, Ex. B attached thereto. The IRS did not have any other address for Petitioner, and therefore the address provided by France was the sole "last known address" the IRS had for Mr. Hanse.

The Petition implies that the Petitioner may not have received a copy of the summons. Even if this is the case, it is not relevant. The IRS fully satisfied its statutory obligations and acted in good faith in sending notice of the summons to Petitioner at the address provided by France. Actual receipt is not necessary for valid service. *Lidas v. United States*, 238 F.3d 1076, 1084 (9th Cir. 2001).

3. **France's Ability To Obtain This Information Under Its Own Laws Is Not Relevant to Whether the Summons Is Enforceable**

The Petitioner claims that he has not been a resident of France since at least 2004. Pet. ¶ 10. He further claims he was a resident of Switzerland from 2004 to 2015 and is currently a resident of the United Arab Emirates. *Id.* He therefore argues that it is not clear whether France would be able to obtain through its own laws the information it is seeking. *Id.*

The Petitioner's argument that his residency status is relevant to whether the United States can issue a summons pursuant to a treaty request was rejected by the Fifth Circuit in *Mazurek v. United States*, 271 F.3d 226 (5th Cir. 2001). In that case, the United States received

6

a tax treaty request from France for financial information located in the United States. *Id.* at 229. The taxpayer argued that under French law, French tax authorities could not continue their investigation until a final decision on his residency status had been made, and that it would be improper for the IRS to provide his financial information to France pursuant to a treaty request from France. *Id.* at 229. The Fifth Circuit held that this argument was meritless because the taxpayer focused on the legitimacy of the French tax examination, and not the legitimacy of the IRS's compliance with the French request. *Id.* at 231. The good faith of the requesting country is not relevant; "as long as the IRS acts in good faith, it need not also attest to – much lest prove – the good faith of the requesting nation." *Id.* at 231-32. Additionally, looking into the good faith of the requesting country's investigation would "unwisely necessitate an inquiry into the propriety of the [requesting country's] action under [that country's] law." *Id.* at 232; *see also Kalra v. United States,* No. 12-CV-3154, 2014 WL 242763, at *3 (N.D. Ill. Jan. 21, 2014) ("The *Powell* factors do not require the IRS to assess the adequacy of the Indian tax practices or the scope of its tax investigation before issuing the summonses for the requested information.").

      Here, there is a direct contradiction between the Request's assertion that Petitioner is a resident of France and Petitioner's own position that he has not been a resident of France since 2004 and is therefore exempt from French taxation. The resolution of this issue is a question of French law, properly addressed in the course of the French tax examination. It is not appropriate for a United States court to opine on this type of question of foreign law, particularly where, as here, it is not relevant to the resolution of the proceeding. Furthermore, even assuming that Mr. Hanse is correct in asserting that he has not been a resident of France since 2004, France asserts that the funds that were involved in the transactions identified in the summons arose from Mr. Hanse's sale of French real estate. *See* Ex. 2, Palacheck Decl. ¶ 6. Even assuming Mr. Hanse

was not a resident of France during the years in question, Mr. Hanse may nonetheless have French income tax liabilities based on France-source income and capital gains generated from the sale of real estate located in France.

 **4. The Tax Convention Between the United States and France Does Not Prohibit Enforcement of the Summons**

 Petitioner further notes that the tax convention between the United States and France does not require the United States to supply this information. Pet. ¶ 10. But simply because information was not mandated to be exchanged does not mean that it is prohibited from being exchanged. This argument was also expressly addressed and rejected by the *Mazurek* court. It noted that while the U.S.-France Treaty in force at the time did not mandate the exchange of information at variance with French law, it did not forbid providing information in compliance with an otherwise proper treaty request. *Mazurek*, 271 F.3d at 233. Thus, there was no substantive limitation on the IRS from providing the requested information *even if* the information would not have been obtainable by French tax authorities.

 Since *Mazurek* was decided, the U.S.-France Treaty's exchange-of-information provisions were amended. Pursuant to the 2009 Protocol to the 1994 U.S.-France Income Tax Treaty ("2009 Protocol"), *Tax Treaties Reporter*, ¶ 3006, Article XI (amending Article 27 Exchange of Information), the relevant exchange-of-information provisions relating to information not obtainable by the requesting party are as follows:

> 3- In no case shall the provisions of paragraphs 1 and 2 be construed so as to impose on a Contracting State the obligation:
> a) To carry out administrative measures at variance with the laws and administrative practice of that or of the other Contracting State;
> b) To supply information which is not obtainable under the laws or in the normal course of the administration of that or of the other Contracting State;
> c) To supply information which would disclose any trade, business, industrial, commercial, or professional secret or trade process, or information the disclosure of which would be contrary to public policy (ordre public)

The current version of Article 27(3) of the U.S.-France Treaty has the same effect as analogous provisions addressed by the *Mazurek* court that have since been superseded by the 2009 Protocol. *See Mazurek*, 271 F.3d at 233. Even if France would not be able to obtain the information it requested under its domestic laws and administrative practices, the United States, may, as a discretionary matter, provide the requested information to France unless doing so would be contrary to U.S. law. This discretion is vested in the U.S. Competent Authority in the Treasury Department. Indeed, to hold that a United States court could prohibit the Treasury Department from providing information to a treaty partner based on the United States court's interpretation of French law would hamper the Executive Branch's ability to conduct foreign relations with other countries.

### 5. The Petition Fails To Raise a Valid Attorney-Client Privilege

Petitioner asserts that some portion of the records requested may be subject to attorney-client privilege. Pet. ¶ 11. A claim of attorney-client privilege will be upheld only: 1) where legal advice of any kind is sought 2) from a professional legal advisor in his capacity as such, 3) the communications relating to that purpose, 4) made in confidence, 5) by the client, 6) are at his instance permanently protected 7) from disclosure by himself or by the legal advisor, 8) except the protection be waived. *See, e.g.*, *United States v. Evans*, 113 F.3d 1457 (7th Cir. 1997) (quoting 8 John Henry Wigmore, *Evidence in Trials at Common Law* § 2292 (McNaughton rev. 1961)). The party asserting the privilege bears the burden of establishing each of the necessary elements. *Id.* at 1461; *United States v. Powell*, 379 U.S. 48, 58 (1964). Blanket assertions of privilege are unacceptable, and claims of privilege must be made and sustained on a question-by-question and document-by-document basis. *Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962); *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982).

The Petition states no factual grounds or legal reasoning for the application of the attorney-client privilege to the documents requested. The cursory and blanket assertion of the privilege is deficient. Not only does the Petition fail to state any basis for the Court to sustain the assertion of attorney-client privilege, the summons seeks documents clearly not protected by the attorney-client privilege.

Matters such as the client's identity, engagement letter, retainer agreement, and fees are generally not privileged because they are not communications, but instead underlying facts concerning the attorney-client relationship. *See Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127 (9th Cir 1992) (billing statements); *Lefcourt v. United States*, 125 F.3d 79 (2d Cir. 1997) (client identities and fees). Furthermore, communications made with a legal advisor who is not acting in that capacity are not privileged. An attorney who acts as his client's agent for receipt or disbursement of money or property to or from third parties is not acting in a legal capacity, and records of such transactions are not privileged. *In re Grand Jury Subpoena*, 821 F.2d 225, 228 (11th Cir. 1987); *United States v. Wells*, 929 F. Supp. 423 (S.D. Ga. 1996). Bank records of receipts and disbursements in lawyers' trust accounts are not privileged communications. *McClary v. Walsh*, 202 F.R.D. 286 (N.D. Ala. 2000). This is so because the deposit and disbursement of money in a commercial account involve a third party financial institution that is not within the bounds of the attorney-client privilege. *SEC v. First Security Bank of Utah, N.A.*, 447 F.2d 167 (10th Cir. 1971) ("A client may not immunize his business transactions from discovery by the device of a lawyer's commercial checking account"); *O'Donnell v. Sullivan*, 364 F.2d 43, 44 (1st Cir. 1966) (rejecting an attorney-client claim with respect to an IRS summons seeking an attorney's client account records); *Najjar v. United States*, 2003 U.S. Dist. LEXIS 9070 (S.D. Ind. 2003).

In this case, France has indicated that it believes that Petitioner transferred over 500,000 euros to a client trust account maintained by Marc D. Sherman & Colleagues, P.C. Palacheck Decl. ¶ 6. The summons seeks information relating to the transfer, control, and disposition of over 500,000 euros that were transferred by third parties in France at the Petitioner's direction to a U.S. client account. Ex. 1, Bjorvik Decl. and Exhibit A attached thereto. Such financial records are not usually accorded any privilege, even if the records were maintained in connection with a *bona-fide* attorney-client relationship. Thus, even if Marc D. Sherman & Colleagues were retained as attorneys – which Petitioner nowhere asserts – it would not provide a basis for asserting the attorney-client privilege.

## **CONCLUSION**

For the foregoing reasons, the Petition should be dismissed.

DAVID A. HUBBERT
Acting Assistant Attorney General

 /s/ Robert J. Wille Jr.
ROBERT J. WILLE JR
Trial Attorney, Tax Division U.S.
Department of Justice P.O. Box 55
Washington, D.C. 20044
202-514-5573 (v)
202-514-5238 (f)
Robert.J.Wille@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 28, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to each counsel of record.

                                                          _/s/Robert J. Wille_____
                                                        ROBERT J. WILLE
                                                        Trial Attorney, Tax Division
                                                        U.S. Department of Justice
                                                        P.O. Box 55
                                                        Washington, D.C. 20044
                                                        202-514-5573 (v)
                                                        202-514-5238 (f)
                                                        Robert.J.Wille@usdoj.gov
                                                        IL Bar #6301188