# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FRANCK HANSE, | ) |
| | ) |
| Petitioner, | ) |
| | ) Case No. 17-cv-4573 |
| v. | ) |
| | ) Judge Robert M. Dow, Jr. |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Respondent the United States of America's ("Respondent's") motion [12] to dismiss Petitioner Franck Hanse ("Petitioner's") petition to quash IRS summons for failure to state a claim or, alternatively, for summary judgment. For the reasons explained below, Respondent's motion [12] is granted, and summary judgment is granted in favor of Respondent. The Court will enter a final judgment and close the case.

**I.    Background**

Petitioner is the subject of an investigation by the French tax authorities relating to his potential income tax and wealth tax liabilities for the tax years ending in 2013, 2014 and 2015. [12, Exhibit 2 (Palacheck Decl.), ¶ 4.] On September 7, 2016, pursuant to a treaty between the United States and France,[1] the French tax authorities sent the IRS an exchange-of-information

---

[1] The United States and France are parties to the Convention Between the Government of the United States of America and the Government of the French Republic for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital, Aug. 31, 1994, U.S.-Fr., (as amended by protocols signed on Dec. 8, 2004 and Jan. 13, 2009) (the "U.S.-France Treaty"). Article 27 of the U.S.-France Treaty provides that the competent authorities of the United States and France may exchange information "as may be relevant for carrying out the provisions of this Convention or to the administration or enforcement of the domestic laws concerning taxes of every kind and description imposed on behalf of the Contracting States." U.S.-France Treaty, art. 27, ¶ 1. The information exchanged "shall be treated as secret in the same manner as information obtained under the domestic laws of that State." *Id.*, ¶ 2. The exchange of information provisions of the U.S.-France Treaty also provide

request seeking information related to these investigations. [*Id.*, ¶ 3.] Specifically, the French tax authorities requested information relating to two transfers of funds totaling over 500,000 euros from Petitioner to a client trust account maintained by the law firm of Marc D. Sherman & Colleagues, P.C. ("Sherman"). [*Id.*, ¶¶ 6–7.]

The request stated that Petitioner was a French citizen domiciled in France; that the request was in conformity with the laws and practices of the French tax administration; and that the French tax authorities exhausted all means available in France to obtain the information that it was seeking. [*Id.*, ¶¶ 5, 11, 13.] The information sought in the request was not in the possession of the IRS, and there was a reasonable basis to believe that the summonsed records may contain information relevant to the French tax authorities' investigation into Petitioner's French tax liabilities. [*Id.*, ¶¶ 11, 14.] Deborah Palacheck, designated as the United States Competent Authority under tax treaties and tax information exchange agreements, determined that this request from France was proper under the provisions of the U.S.-France Treaty and that it was appropriate to honor the request. [*Id.*, ¶¶ 1, 16.] Therefore, pursuant to the request and Respondent's obligations under the U.S.-France Treaty, an IRS agent personally served a summons on Sherman on June 1, 2017. [12, Exhibit 1 (Bjorvik Decl.), ¶ 2.] The summons requests nine categories of documents relating to the French income and wealth tax liabilities of Petitioner and, specifically, the euro transfers from Petitioner to Sherman. [1, Exhibit A (IRS Summons), at 5.] The summons names the time for production of the documents as July 5, 2017. [*Id.*, at 1.] Notice of the summons was also sent via certified mail on June 2, 2017 to those named in the summons (Petitioner and Byline Bank). [12, Exhibit 2 (Palacheck Decl.), at Exhibits B–C]. The notice was sent to Petitioner at the French address provided by the French

---

that the provisions should not be construed to impose on a Contracting State the obligation "to supply information which is not obtainable under the laws or in the normal course of the administration" of either Contracting State. *Id.*, ¶ 3(b).

authorities after the IRS searched its own records and did not find any additional addresses in its files for Petitioner. [*Id.*, ¶¶ 8–10.]

On June 19, 2017, Petitioner filed a timely petition to quash the IRS summons to Sherman pursuant to I.R.C. § 7609(b)(2). [See 1.] The petition raises three objections to the IRS summons. First, Petitioner contends that the IRS did not comply with the administrative steps required by the Internal Revenue Code. [*Id.*, ¶ 9.] Specifically, Petitioner states that the IRS (1) contacted third parties regarding his tax liabilities without providing advance notice to Petitioner as required by I.R.C. § 7602(c)(1) and 26 C.F.R. § 301.7602-2(d)(1), and (2) did not provide notice to petitioner of the summons as required by I.R.C. § 7609(a)(1). [*Id.*, ¶¶ 7–8.] Second, Petitioner contends that France may not be able to obtain, through its own laws, the information sought in the IRS summons because he is not a French resident, and the U.S.-France Treaty does not require the United States to supply information that is not obtainable under the laws of France. [*Id.*, ¶ 10.] Finally, Petitioner states that because Sherman is a law firm, some of the materials requested are protected from disclosure by attorney-client privilege. [*Id.*, ¶ 11.] Respondent thereafter filed a motion [12] to dismiss the petition or, alternatively, for summary judgment, which is currently before the Court.

## II. Legal Standard

Respondent has moved to dismiss the petition under Federal Rule of Civil Procedure ("Rule") 12(b)(6) or, alternatively, for summary judgment under Rule 56 if the Court determines that the motion expands the scope of the pleadings. [See 12.] In ruling on a Rule 12(b)(6) motion, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Under such a scenario, "[a]ll parties must be given a reasonable opportunity to present all the

material that is pertinent to the motion." *Id.* Here, both Petitioner and Respondent have had reasonable opportunity to present such material, given that Respondent titled its motion as a "Motion to Dismiss Petition to Quash or, Alternatively, for Summary Judgment." Respondent also supported its motion with two declarations and included a statement of material facts as required by Local Rule 56.1(a).[2] [See 12-1, at 1–3.] Petitioner clearly recognized that this Court might treat Respondent's motion as one for summary judgment, as he attached information outside of the pleadings to his opposition. [See 16, Exhibit A–B (Registration Cards from French Consulates in Geneva and Dubai)]. Moreover, Petitioner did not move for additional discovery pursuant to Rule 56(d) or request an evidentiary hearing on his petition to quash the summons. See *2121 Arlington Heights Corp. v. I.R.S.*, 109 F.3d 1221, 1226 (7th Cir. 1997) (petitioner may request evidentiary hearing on a petition to quash IRS summons, and whether hearing is needed is left to the district court's discretion). The Court will thus proceed on the motion as one for summary judgment. See *Arns v. United States*, 39 F. App'x 442, 444 (7th Cir. 2002) (affirming judgment of district court in similar case where the district court treated motion to dismiss or for summary judgment as a Rule 56 motion for summary judgment).

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable

---

[2] Respondent did not file its statement of material fact as a separate document, but instead included this statement in its memorandum in support of its motion. [See 12-1.] Because there is no explicit requirement that this statement be filed as a separate document, the Court considers Respondent's statement to be in compliance with the Local Rules. See *Del. Motel Assocs., Inc. v. Capital Crossing Serv. Co. LLC*, 2017 WL 4512709, at *2 (N.D. Ill. Oct. 10, 2017) (concluding it would be against "the spirit of the rules" to deny a motion for summary judgment merely because a statement of facts was not submitted in a separate document, where Local Rule 56.1 was otherwise complied with) (citation omitted).

inferences in that party's favor (here, Petitioner). *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

In the Northern District of Illinois, a party moving for summary judgment must file along with its motion a Local Rule 56.1(a) statement of undisputed facts, consisting of short numbered paragraphs and citations to affidavits or other parts of the record relied on to support the facts set forth in each paragraph. N.D. Ill. L.R. 56.1(a). In response, the party opposing the motion must file its own statement of undisputed facts in the same manner. N.D. Ill. L.R. 56.1(b). If the party opposing summary judgment fails to file such a statement, "[a]ll material facts set forth in [the moving party's statement] will be deemed to be admitted." N.D. Ill. L.R. 56.1(b)(3)(C); see also *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (affirming district court's decision to admit the facts set forth in moving party's Local Rule 56.1 submission where nonmovant failed to timely respond). In this case, Respondent included a Local Rule 56.1(a) statement of material facts with its motion. [See 12-1, at 1–3.] Petitioner failed to file a Local

5

Rule 56.1(b) statement of material facts with his response. Accordingly, the facts set forth in Respondent's statement are deemed admitted. See N.D. Ill. L.R. 56.1(b)(3)(C); see also *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010).

## III.    Analysis

Petitioner has moved to quash the IRS summons issued to Sherman pursuant to I.R.C. § 7609(b)(2). The Internal Revenue Code grants the IRS power to issue summonses "[f]or the purpose of * * * determining the liability of any person for any internal revenue tax." I.R.C. § 7602(a)(2). The IRS may also issue summonses to obtain information for a treaty partner. See *United States v. Stuart*, 489 U.S. 353, 357 (1989); *Lidas, Inc. v. United States*, 238 F.3d 1076, 1081 (9th Cir. 2001). As a person entitled to notice of the summons to Sherman under I.R.C. § 7609(a), Petitioner is entitled to move a district court to quash the summons. I.R.C. § 7609(b)(2) (any person identified in the summons is entitled to notice thereof, and those entitled to notice may move to quash that summons); *2121 Arlington Heights*, 109 F.3d at 1223.

In resolving a motion to quash an IRS summons, the government (Respondent) bears the initial burden to make a *prima facie* case that the IRS issued the summons in good faith. *2121 Arlington Heights*, 109 F.3d at 1224. To meet this burden, Respondent must satisfy the four factors articulated by the Supreme Court in *United States v. Powell*, 379 U.S. 48 (1964): Respondent must show that the IRS summons (1) was issued for a legitimate purpose; (2) seeks information that may be relevant to that purpose; (3) seeks information not already within the possession of the IRS; and (4) was issued after the IRS satisfied all administrative steps required by the Internal Revenue Code. *2121 Arlington Heights*, 109 F.3d at 1224 (citing *Powell*, 379 U.S. at 57–58); see also *Khan v. United States*, 548 F.3d 549, 554 (7th Cir. 2008); *United States v. Bernhoft*, 666 F. Supp. 2d 943, 945 (E.D. Wis. 2009); *Good Karma, LLC v. United States*, 546

F. Supp. 2d 597, 602 (N.D. Ill. 2008). Respondent's burden remains the same where the IRS summons is issued pursuant to a request from a treaty partner. See *Stuart*, 489 U.S. at 370 (IRS entitled to enforcement of summons issued pursuant to Canadian authorities' request "[s]o long as the IRS itself acts in good faith, as the term was explicated in [*Powell*], and complies with applicable statutes"). These requirements impose only a "minimal" burden on Respondent, and Respondent can usually satisfy it by submitting affidavits from the agents investigating the case. *Miller v. United States*, 150 F.3d 770, 772 (7th Cir. 1998); *2121 Arlington Heights*, 109 F.3d at 1224.

Once Respondent makes its *prima facie* case, the burden shifts to the Petitioner to come forward with specific facts that disprove any of the *Powell* factors or otherwise show that the IRS issued the summons in bad faith or in a manner that constitutes an abuse of process. *2121 Arlington Heights*, 109 F.3d at 1224. This is a heavy burden for the taxpayer to meet. *Id.*; see also *United States v. Kis*, 658 F.2d 526, 535 (7th Cir. 1981) ("[T]he burden on the taxpayer to prove Government wrongdoing is significantly greater than that on the Government to show its legitimate purposes.").[3]

### A. Respondent's *Prima Facie* Case

To support its motion, Respondent has submitted declarations from Deborah Palacheck, the United States Competent Authority under tax treaties and tax information exchange

---

[3] Respondent has not moved to enforce the summons served on Sherman. [See 12.] There is some authority in this district and elsewhere that the government does not need to initially establish a *prima facie* case when it moves only to dismiss a petition to quash an IRS summons (rather than moving for enforcement). Instead, the burden shifts immediately to the petitioner to establish a valid defense to the summons. See *Kalra v. United States*, 2014 WL 242763, at *1 n.2 (N.D. Ill. Jan. 21, 2014); *Gonzalez v. United States*, 2011 WL 4688721, at *2 n.2 (N.D. Ill. Oct. 4, 2011); *O'Doherty v. United States*, 2005 WL 3527271, at *5 (N.D. Ill. Dec. 20, 2005); see also *Guglielmi v. United States*, 2013 WL 1645718, at *1 (S.D.N.Y. Apr. 15, 2013); *Peterson v. United States*, 2012 WL 682346, at *2 (E.D. Pa. Mar. 2, 2012). Because the Court finds that Respondent has established a *prima facie* case, however, any issue of burden shifting is irrelevant.

agreements, and Alex Bjorvik, the IRS agent who personally served the summons on Sherman. [See 12, Exhibits 1–2.] With these declarations, Respondent has easily satisfied its minimal burden to establish a *prima facie* case that the summons to Sherman was issued in good faith. See *2121 Arlington Heights*, 109 F.3d at 1224 (the government's burden "isn't much of a hurdle"). First, Palacheck states that the summons was issued pursuant to a proper request from France under the provisions of the U.S.-France Treaty, and that the request stated that it is in conformity with the laws and administrative practices of the French tax administration. [12, Exhibit 2 (Palacheck Decl.), ¶¶ 13, 16.] Assisting a foreign tax authority is a legitimate purpose that satisfies the first *Powell* factor. See *Kalra v. United States*, 2014 WL 242763, at *2 (N.D. Ill. Jan. 21, 2014) (citing *Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001)); *Lidas*, 238 F.3d at 1081; see also *Stuart*, 489 U.S. at 361 (IRS summons issued to assist Canadian tax investigation could be enforced). Second, Palacheck states that the records requested in the summons, if produced, may contain information relevant to the French tax authorities' determination of Petitioner's tax liabilities. [12, Exhibit 2 (Palacheck Decl.), ¶ 14.] This satisfies the second *Powell* factor. See *2121 Arlington Heights*, 109 F.3d at 1224 (noting that *Powell* only requires that records sought in an IRS summons "may be" relevant) (citing *United States v. Arthur Young & Co.*, 465 U.S. 805, 814–15 (1984)). Regarding the third *Powell* factor, Palacheck states that the information is not in the possession of the IRS, and the French tax authorities indicated that they exhausted all means available in France to obtain the requested information. The French tax authorities also indicated a continuing need for this information after the petition to quash was filed. [12, Exhibit 2 (Palacheck Decl.), ¶¶ 11, 15.] Finally, the declarations submitted by both Palacheck and Bjorvik establish that the summons was properly served on Sherman and that notice was properly sent to Petitioner (as a third party referenced in

8

the summons) pursuant to I.R.C. § 7609.  Specifically, notice was sent to Petitioner via certified mail within three days of service of the summons on the summoned party.  The notice was sent to Petitioner's French address after the IRS searched its records for any alternative addresses.  [12, Exhibit 1 (Bjorvik Decl.), ¶¶ 1–2]; [12, Exhibit 2 (Palacheck Decl.), ¶¶ 8–10.]   This satisfies the fourth *Powell* factor.  See *Kis*, 658 F.2d at 536; *Kalra*, 2014 WL 242763, at *2.  The government has therefore established its *prima facie* case that the IRS summons was valid.  See *2121 Arlington Heights*, 109 F.3d at 1224; see also *Stuart*, 489 U.S. at 360–61 (affidavit from IRS agent established *prima facie* case that IRS summons issued to assist foreign tax investigation was issued in good faith); *Mazurek*, 271 F.3d at 230 (same); *Lidas*, 238 F.3d at 1082 (same).

### B. Petitioner's Objections

Because Respondent has established a *prima facie* case that the IRS issued the summons to Sherman in good faith, the burden shifts to Petitioner to come forward with specific facts that disprove any of the *Powell* factors or otherwise challenge the good faith of the IRS summons.  *2121 Arlington Heights*, 109 F.3d at 1224; see also *Kis*, 658 F.2d at 543 (noting that Petitioner's burden here "is significantly more stringent than that of a party opposing a motion for summary judgment").

#### 1. The Good Faith of the French Tax Investigation

In his opposition to Respondent's motion, Petitioner argues that the French tax authorities are not entitled to the information sought by the summons to Sherman under French law.  [16, at 1.]  Specifically, Petitioner argues that he was a resident of Switzerland, not France, during the relevant tax years and, as a non-resident French citizen, he does not have to pay tax on income earned outside of France.  [*Id.*]  Petitioner also states that his wife still resides in France but their

9

premarital arrangement does not affect his status as a French taxpayer. [*Id.*, at 2.] According to Petitioner, the French tax authorities should be required to resolve the question of his residency status before the IRS procures information to assist in the French investigation.

This appears to be a challenge to the first *Powell* factor requiring that the summons be issued for a legitimate purpose. Petitioner's arguments on this point fail, however, because the IRS was not required to assess the good faith of France's tax investigation into Petitioner before issuing the summons to Sherman. While the Seventh Circuit has not spoken on this issue, other circuits have rejected arguments similar to those made here by Petitioner. In *Mazurek v. United States*, 271 F.3d 226 (5th Cir. 2001), the petitioner challenged an IRS summons issued pursuant to a French request under the U.S.-France Treaty by arguing that he was not a French resident during the periods implicated by the French tax investigation. *Mazurek*, 271 F.3d at 231–32. The Fifth Circuit rejected this argument because the petitioner improperly focused on the legitimacy of the French investigation rather than the legitimacy of the IRS's compliance with the *Powell* good faith requirements: "[t]o rebut the *Powell* requirement, [petitioner] must show that the *IRS* is acting in bad faith. As long as the IRS acts in good faith, it need not also attest to—much less prove—the good faith of the requesting nation." *Mazurek*, 271 F.3d at 231. Other courts have followed this reasoning and held that, in situations where the IRS issues a summons on behalf of a foreign country's tax investigation, the good faith of the requesting country is irrelevant as long as the IRS itself acted in good faith in issuing the summons. *See, e.g.*, *Villarreal v. United States*, 524 F. App'x 419, 423 (10th Cir. 2013) (rejecting allegations of a harassment campaign by the foreign tax authority because that entity's good faith "is irrelevant; what matters is the IRS's good faith in issuing the summons."); *Lidas*, 238 F.3d at 1082 ("[T]he IRS need not establish the good faith of the requesting nation."); *Kalra*, 2014 WL 242763, at *3

("The *Powell* factors do not require the IRS to assess the adequacy of the [foreign tax authority's] tax practices or the scope of its tax investigation before issuing the summonses for the requested information."); *Guglielmi v. United States*, 2013 WL 1645718, at *2 (S.D.N.Y. Apr. 15, 2013) (the IRS is not required to assess adequacy of another country's tax law or practices, as such a requirement would "unwisely necessitate an inquiry into the propriety of the [foreign tax authority's] actions under [foreign] law") (quoting *Mazurek*, 271 F.3d at 231–32); *United States v. Hiley*, 2007 WL 2904056, at *3 (S.D. Cal. Oct. 2, 2007) ("The relevant question is not whether the [foreign tax authorities] can impose an income tax upon [petitioner], but whether the IRS issued its summonses in good faith.").

Thus, whether Petitioner is a resident of France, and whether the French tax authority has resolved or will resolve the issue of Petitioner's residency, is ultimately irrelevant to the issue that is currently before the Court—whether Petitioner has presented any specific facts to rebut Respondent's *prima facie* case that the IRS issued a summons to Sherman in good faith.[4] Petitioner has not challenged the good faith of the IRS in issuing the summons to Sherman, but instead merely argues that the "concerns animating the judiciary's deference to the IRS summons power * * * are at their nadir here" because there is no domestic tax investigation involved. [16, at 2.] Petitioner's assertions and arguments on this point do not satisfy his burden to rebut the

---

[4] Even if the good faith of the French tax investigation into Petitioner was relevant, Petitioner has not presented the Court with any statement of facts pursuant to Local Rule 56.1(a) to support his contentions regarding his French residency. And, because Respondent's facts have been deemed admitted, the fact that France's request to the IRS indicates that Petitioner is domiciled in France has been deemed admitted. [See 12-1, ¶ 6.] The factual assertions in Petitioner's opposition to Respondent's motion regarding his residency—including his explanation of his premarital agreement with his wife, his Swiss residency, and the tax treaty between France and Switzerland and its effects on his French tax liability— are almost entirely unsupported and do not help Petitioner meet his burden to rebut Respondent's *prima facie* case of good faith. Moreover, Petitioner does not even attempt to address Respondent's contention that the Euro transfers of interest to the French tax authorities may be subject to French taxation separate and apart from the issue of Petitioner's residency. [12-1, at 8.]

IRS's good faith in issuing the summons, however, and thus are ultimately irrelevant. The Court will not inquire into the propriety of France's tax investigation into Petitioner's liabilities, and Petitioner has not met his burden to challenge the good faith of the IRS summons to Sherman by challenging the French investigation.[5] See *Net Promotion, Inc. v. United States*, 2012 WL 6015610, at *3 (D. Minn. Sept. 19. 2012) ("Whether Petitioner incurs French income tax liability has no effect on whether the IRS is acting in good faith to meet its obligations under the Treaty.").

### 2. Compliance with Internal Revenue Code

In his original Petition, Petitioner objects to the IRS summons to Sherman on the basis that the IRS did not comply with the notice requirements of I.R.C. § 7602(c)(1) and § 7609(a). [1, ¶¶ 7–9.] Petitioner did not raise these objections in his opposition to Respondent's motion or otherwise address Respondent's arguments that all required administrative steps were satisfied.

Petitioner's objections here fail to successfully rebut the IRS's good faith in issuing the summons to Sherman. First, Petitioner's argument regarding I.R.C. § 7602(c)(1) fails because he is not entitled to any advance notice of a third-party summons under this section of the Internal Revenue Code. This section provides that an IRS employee "may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made." I.R.C. § 7602(c)(1); see also 26 C.F.R.

---

[5] Petitioner's argument that the United States is not required under the U.S.-France Treaty to provide any information to France that France could not obtain under its own laws is also of no help to Petitioner. [See 1, at 3.] The U.S.-France Treaty states that its provisions should not be construed to impose on a Contracting State the obligation "to supply information which is not obtainable under the laws or in the normal course of the administration" of either Contracting State. U.S.-France Treaty, art. 27, ¶ 3(b). But "even though it does not *mandate* the exchange of information at variance with French law, neither does the plain language of the Treaty *forbid* compliance with an otherwise proper treaty request." *Mazurek*, 271 F.3d at 233.

§ 301.7602-2(a). According to Petitioner, as the "taxpayer" he therefore should have been notified by the IRS that a third party would be contacted in connection with an investigation into his tax liability. But, as Respondent points out, "tax liability" for purposes of this section "does not include the liability for any tax imposed by any other jurisdiction." 26 C.F.R. § 301.7602-2(c)(3)(C). The summons was issued to Sherman in relation to Petitioner's potential tax liability in France, not the United States, and therefore it does not fall into the relevant definition of "tax liability" for purposes of this section. Therefore, the IRS was not required to notify Petitioner in advance of a third party summons under I.R.C. § 7602(c)(1).

Second, Respondent has presented ample evidence of compliance with I.R.C. § 7609(a) that Petitioner has not challenged. I.R.C. § 7609(a) requires that any person identified in a third-party summons to be given notice of that summons "within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such record are to be examined." I.R.C. § 7609(a)(1). Notice is sufficient if it is sent via certified or registered mail to the last known address of the person being given notice. *Id.* § 7609(a)(2). The summons at issue was served on Sherman on June 1, 2017. [12, Exhibit 1 (Bjorvik Decl.), ¶ 2.] Notice was sent to the two parties identified within the summons—Petitioner and Byline Bank—via certified mail on June 2, 2017. [12, Exhibit 2 (Palacheck Decl.), ¶¶ 9–10.] The notice to Petitioner was sent to the French address for Petitioner provided by the French government in its request, after the IRS searched its own databases for an alternative address and found none. [*Id.*, ¶ 8.] No more was required of the IRS to properly serve Petitioner under the relevant portion of the Internal Revenue Code. See *Lidas*, 238 F.3d at 1083–84 (IRS did not violate I.R.C. § 7609 when it sent notice of summons to the subject of a

foreign tax investigation to the address for the subject provided by foreign authorities as well as to the subject's last known address in the IRS's own database).

### 3. Attorney-Client Privilege

Petitioner also raises a privilege objection in his petition: Petitioner states that Sherman is a law firm, and therefore some of the summoned materials are protected from disclosure by attorney-client privilege. [See 1, ¶ 11.] Again, Petitioner did not raise this objection in response to Respondent's motion, nor did he otherwise address Respondent's arguments on this point. Moreover, Petitioner's blanket assertion of privilege is insufficient to challenge the validity of the IRS summons to Sherman. See *United States v. First State Bank*, 691 F.2d 332, 335 (7th Cir. 1982) (rejecting blanket privilege challenge to IRS summons); see also *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) ("[A] blanket claim of privilege is unacceptable."). To properly assert a privilege, Petitioner has the burden to "on a document-by-document basis * * * at least identify the general nature of that document, the specific privilege he is claiming for that document, and facts which establish all the elements of the privilege he is claiming." *First State Bank*, 691 F.2d at 335; see also *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003) ("The mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements."); *Holifield v. United States*, 909 F.2d 201, 204 (7th Cir. 1990) (rejecting claim of attorney-client privilege with respect to documents requested in IRS summons where petitioner made blanket privilege claim without setting forth specific facts to support that claim); *Bernhoft*, 666 F. Supp. 2d at 948 (petitioner's "assertions of blanket privilege, without any specific application to each document, are no more than brief conclusory summations that have been rejected by the [Seventh Circuit] in prior privilege

determinations") (internal quotation marks and citation omitted).  Petitioner has not supported his privilege claim with any facts from which the Court could find a privilege attaches to the documents that are requested in the summons.  Petitioner does not even assert that Sherman was retained as his attorney; he merely states that Sherman is a law firm.  [1, ¶ 11.]  Petitioner also states that "some" of the materials are protected from disclosure by the privilege without identifying which materials he claims are privileged or why.  [*Id.*]  Therefore, he has not met his "heavy" burden of rebutting Respondent's *prima facie* case on this basis.  *2121 Arlington Heights*, 109 F.3d at 1224; *Bernhoft*, 666 F. Supp. 2d at 949.

In sum, Petitioner has failed to rebut the IRS's good faith in issuing the summons to Sherman.

## IV. Conclusion

For the foregoing reasons, Respondent's motion [12] is granted, and summary judgment is granted in favor of Respondent.  The Court will enter a final judgment and close the case.

Date: March 5, 2018

Robert M. Dow, Jr.
United States District Judge